At this time, would Counsel for the Impellents please introduce himself on the record to begin. Good morning, and may it please the Court, Lee Harrington for the Impellents, AeroBalloon USA, Inc., and its Principal, Douglas Haase. The underlying case is a simple two-party contract dispute. There was a purchase and sale agreement in six parts between my client, AeroBalloon, and his Principal, Douglas Haase, in Zhajing, Beijing, Tourism, by which the impellents were supposed to design, construct, get certified by the Chinese government, and deliver these massive hot air balloons that could transport 20 to 40 people up at one time. When that process had been substantially completed and certification had been achieved, which was a critical point in the case, the appellees, Zhajing, instead of going forward with completion, filed an arbitration in September of 2018 alleging some defaults under the contract. Before that time, there had been payments made pursuant to the contract that are set forth in a supplemental agreement. We're on just a particular question about what to do with the jury awards and how you're going to get to that part of it. Sure. So we think, based on the record, this is a domestication of this Chinese arbitration award. That's all I was trying to get to, Your Honor. Yeah. So in the course of that litigation, the trial below, there were claims made that there were fraudulent transfers from AeroBalloon to Mr. Haase and Mr. Haase and his wife and some other accounts. We think the record is devoid of any evidence. In fact, I don't think there's really any argument that there was intentional fraud under the fraudulent transfer statute. That's incorrect. But let's assume that the jury verdict is based on the fact that there was expert evidence from the plaintiff's expert that the company was insolvent from 2016 on. And it's undisputed, indeed, your Exhibit 16 shows transfers of the payments made to AeroBalloon from 2016 on into the private bank accounts of your client, Mr. Haase, who suspended. So why is that insufficient to support the jury verdict? I guess there are two parts to how I'd like to respond to you, Judge Lynch. First of all, the transfers at issue from 2016 to 2018 were made while AeroBalloon was performing under this contract with Jia Jing. They were making these progress payments that were set forth in the supplemental agreement and earned those payments. It's not disputed in the expert testimony, but the expert testimony is on the record and the jury was entitled to believe it. The expert testimony ignores an important part of the contract and, in fact, it intentionally doesn't cite that part of the contract. But doesn't that go to the weight of the evidence, credibility? We have a jury here, so it's not a legal issue. It becomes a factual issue for the jury. And that's exactly right, your Honor. It's a factual issue for the jury that they were compelled to analyze in the course of their deliberations and the explicit instruction from the trial court judge was, you must examine each one of these transfers in the context of this evidence and in rendering your verdict. And they came back with a verdict that was $500,000. But the problem with the verdict and the repeated instructions, they're not objective. There's no objection. So that's another issue you have. How do you surpass that? You did not object either to the form of the questions that went to the jury or to the jury's instruction. But your point is you liked the instruction. Why would you have objected to it? You wanted them to follow it. I understand that. Correct. But just so I get your argument, are you disputing whether there's evidence of a million dollars of fraudulent transfers? Are you disputing only whether there's evidence of $1.6 million? I'm disputing the fact that the jury didn't do its job. That's a different, I'm not asking that question. Suppose they had found $1.1 million. I think that it would have been much easier to draw an inference of the jury to actually consider the evidence. So are you making any argument that there is, in fact, no evidence supporting $1.1 million? Which is a different question than whether the jury plausibly can be understood to have found $1.1 million. I understand that point. I'm asking a different question. Imagine this jury had come back with a verdict of $1.1 million. Are you saying there's no evidence in the record to support that? I can't sit here and say that. So the structure of your argument is that even though there's evidence of $1.1 million, we still can't find that there's support for the jury verdict because they, in fact, found $1.6 million, which you're saying is a legal matter, shows they didn't know what they were doing, didn't understand what was happening, so there's no finding at all. Is that the idea? Essentially, Your Honor, particularly where the trial judge repeatedly was saying it's $1.6 million, it's $1.6 million. And in fact, the judge said... So just so I understand that, suppose on Claim 2, the jury came back $1.6, and on Claim 3 came back $1.1. I mean, on the Chapter 93A, would you take the same position that the Chapter 93A verdict has to be thrown out also? I think it would be hard to make the argument, Your Honor, candidly. I think that there would be evidence... So then you are saying that we really just can look at the Chapter 93A claim independently. In other words, whatever they did with the fraudulent transfer claim, it's as if it doesn't exist. We should just look at whether there's evidentiary support for the Chapter 93A finding. No, because the same evidence undergirds both claims. I understand the same evidence. I understand that. But all I'm saying is, with respect to the Chapter 93A claim, then the argument that you're making is, there's no evidence to support $1.6, but there would have been evidence to support $1.1 on that. I want to respond carefully, Your Honor. I don't think there was evidence. At least there was not... There was controverted evidence. Controverted evidence. I understand that... So you can't... So for purposes of Rule 50A... Yes. Okay. Just taking that as a given then, what is the reason to conclude, just looking at the Chapter 93A verdict, what is the basis for concluding that that can't stand as a Rule 50A matter? Because what it seems like your argument's premised on is the jury instructions not having been followed. And I don't understand how that's a Chapter 93A... That's a Rule 50A argument. I thought under Rule 50A, we just look at, was there sufficient evidence to support such a verdict? Not through the lens of the jury instructions, but just, is there, in fact, evidence to support the verdict? Is there a case law that says otherwise? No, Your Honor. And if it appears that we are contesting the jury instructions... I'm not saying you're contesting them. What I'm saying is you're saying to us, we know that there's no support for that $1.6, has something to do with the jury instructions not having been followed. Am I misunderstanding you? I... Suppose the jury instructions had not said you have to go transfer by transfer, and we just look, was there $2 million, was there evidence of $1.6 in the record? What's your answer to that? I think that's where the problem lies, in that the jury instruction didn't say, here's the dollar amount, go find it. It said, what is the dollar amount? And the transfers at issue was only, it equaled $1.13 million. I understand, but if there were non-bank-to-bank transfers, wasn't there evidence put forward of non-bank-to-bank transfers? I don't believe so. I think there were transfers to multiple accounts, but I believe, Your Honor, that they were all Bank of America accounts, but there may have been a family trust or something of that nature. He had the company pay some of his credit card bills. That's correct, Your Honor. Yes. The minimum amounts, yes. And your opponent says if you total all of the evidence, it's actually $2.2 million, roughly, in transfers over a long period of time, including after the arbitration award. Okay. Yes. And you do agree that there was that evidence? Yes. Okay. Ignoring the evidence that there were... Let me ask the 93A question a little differently. Your opponent says this case, in the end, just comes down to the 93A issue and whether they're entitled to attorney's fees. Isn't it clear under 93A that all it takes is one fraudulent transfer? Doesn't have to be $2.2 million, doesn't have to be $1.6 million, it just has to be one fraudulent transfer, and then there's 93A liability? I agree that the standard in 93A is different than under the Uniform Fraudulent Transfer Act. But do you agree all it takes is one transaction? I believe you could bring a student under 93A for one fraudulent transfer. Okay. Then what's wrong with this 93A verdict? We think that it was a verdict that was rendered by a jury that didn't do its job. So it suffers the same infirmity. The way the jury has to do its job is you give them instructions and there's a verdict form. None are objective. So if the jury is not presenting, one thing could be some crazy questions that come back to and from, but that's not the case here. And the judge responds to that. Here you have the unobjected objections, unobjected verdict form, and how do we know the jury didn't do its job? It's presumed that there's a very strong presumption there that it did its job following instructions. We can tell that they didn't do their job because they added up transfers of $1.3 million and said they were worth $1.6. Yeah. And then they came back in deliberations twice on this issue. And what was the remedy for that that was sought and received as to the non-Chapter 93A claim? I'm sorry, Your Honor. What was the remedy for that error by the jury that was sought and obtained with respect to the non-Chapter 93A verdict? Remitted it, right? You asked for remitted it. And you got it. And you got it. So that would be $1.1 million. Yeah. To be clear, I wasn't involved. But you said yes. And you got $1.1 million. Judge Young did reduce the $1.6 million. So let's say you take the same problem as to the Chapter 93A. Let's say you're dead right. It shouldn't have been $1.6. Why wouldn't we think that the right answer then is $1.1? Which, since you've agreed that even one transfer would be enough, would still suffice to support the Chapter 93A. Why would we conclude that because there was an error in the amount, that means there was an error as to liability? I just don't follow that. Because it's... We didn't do that on the other claim, but with respect to the other claim, your own position was that it didn't affect liability, it only affected amount. So why would we take a different view as to Chapter 93A? Based on the record at the trial, it seems inconceivable that one couldn't reach the conclusion that the jury didn't understand. And I admit fraudulent transfer laws is a complicated animal. Didn't understand what it was supposed to do and just rubber-stamped the $1.6 million that the judge kept parroting during the trial. That they didn't look at each transfer and say, when this transfer was made, was error balloon rendered insolvent? Was there other streams of revenue for error balloon? Yes, there were. But that's an argument for not having remitter to 1.1, right? That's an argument for throwing out that claim, not getting remitter to 1.1. I take your point, Your Honor. Yeah. Well, then it would be a little bit strange to say, we're going to reduce that one to 1.1, but for this one, we're going to throw it out entirely. And if we don't throw it out entirely, then there is a basis for the Chapter 93 verdict. That might affect the amount of attorney's fees if it's 1.1 rather than 1.6, but you haven't made any argument that the reason you should win on appeal is because the attorney's fees should be reduced in light of the liability only being 1.1 rather than 1.6. You've just argued no attorney's fees at all. So, that seems waived. So, I just don't quite understand the argument. You've reserved one minute, so we'll hear from your opponent. Thank you, Your Honor. I appreciate it. Thanks for hearing us. Thank you, counsel. At this time, if counsel for the appellee will please introduce himself on the record to begin. Thank you. May it please the Court. Good morning. My name is Mark Redlich, and I'm here to represent the petitioner, Jiajing Beijing Tourism. I know the Court is clearly familiar with the record, with the trial, and background. I'd like to take this opportunity to highlight some points which are important in considering the district court's judgment. Let me start out by pointing out that no one in this case, not the petitioner, not the was transferred by Mr. Haase from his AeroBalloon Corporation that he wholly controlled and owned to his personal accounts. And as proof of that, if the Court looks at Trial Exhibit 16, that is a listing of all of the transfers from AeroBalloon to the Haase accounts prepared by their expert, the responsible respondents expert, Michael Goldman. So as to the very basis of this matter, no one disputes that $1,113,000 was transferred. The standard of review in this case is whether there has been plain error. And that is as a result of the respondents not objecting to the jury verdict that they had preserved the objection on your argument. Even if they had preserved their objection. Is it your argument that the evidence was more than sufficient to support the jury, both the Yes, Your Honor. I know the Court knows this, but let me just point out that the jury had, as exhibits, all of the Bank of America records for AeroBalloon and AeroBalloon's credit cards. The AeroBalloon records of Mr. Haase's personal credit cards were not present. They were before the jury. And there is other evidence, documentary and bank record evidence, that not only $1,113,000 was removed by Haase, but really $1,600,000 was a very reasonable verdict. Any jury could have found that. Your Honor, given the posture of the case, there was the remitter. That's not appealed by you. Correct, Your Honor. So is that law of the case that, in fact, there's only evidence of $1,113,000? If I can just explain that, it's certainly law of the case. We did not dispute the remitter for this reason. They did not appeal the verdict on count three, which was a piercing the corporate veil for commingling. That verdict affirmed the application to Mr. Haase of AeroBalloon's arbitration award of $1.41 million. I think what happened here, as I read the transcripts afterwards, and at the time hearing the court, I believe Judge Young was just trying to demonstrate to the jury that $1.41 million, if the jury finds that there was fraudulent transfers, had even said with interest, would come out to about $1.6 million. He was talking about the fraud. Whatever we could speculate about, just a simple point, with respect to the fraudulent conveyances finding, it would seem to me it's law of the case that there was only evidence of $1.13,000, and four, that is fraudulent transfers and Chapter 93A. I'm sorry, why are you conceding the 93A? You make the argument that the 93A verdict can stand because there were unfair and deceptive practices in addition to the fraudulent transfer. Yes, well, the reason is that only one count verdict would prevail. Count three for piercing the court prevail was in the amount of $1.41 million, the arbitration award, plus interest of 4.35% mandated by the arbitration panel. So, as our footnote one in Appley's brief indicates, that sum comes out to over $1.7 million. So, in a sense, it was not necessary to press the issue of the fraudulent transfers over and above the remittance or number chosen by the judge of $1.113 million. We believe very strongly that the jury could have found much more than the $1.13 million. That was just the bank, large bank transfers. When you say could have, which claim are you talking about now? Fraudulent transfers. Okay. But that's significant, potentially. I don't think it actually may matter, but just so we understand what's happening here. Is there any basis for the Chapter 93A claim apart from the fraudulent transfers? Well, we believe that the Chapter 93A claim was also reasonably based on the commingling and the piercing the court prevail. We believe that and we argue that to the district court. The district court did not accept that. So that wasn't presented to the jury? No, no. We presented all of the evidence to the jury. But the only contention that was made to the jury for the basis of finding the Chapter 93A claim was the fraudulent transfers? No, we argued both aspects. We argued that Mr. Haase had taken, misappropriated, and was responsible for the arbitration award. And the amount was up to the jury in their deliberations, both as to the piercing the corporate veil and as to the fraudulent transfers. That was in the province of the jury. So is the argument that you're making to us that for purposes of the Rule 50A motion and the denial of it, which is, as I take it, all that's before us here, that there was substantial evidentiary support for the 1.6 million on the Chapter 93A claim, even if there was only evidence of 1.1 million of fraudulent transfers? That was our position at the trial. However, the judge felt that the imposition of a reward of attorney's fees should be based only on the fraudulent transfer issue. And I never thought I would say this in court, but the court will note that the judge reduced our request for attorney's fees by more than 50 percent, based on the court's comments at the follow-up hearing, that he was going to award attorney's fees solely on the basis of the fraudulent transfers. And you didn't cross-appeal that finding? No, Your Honor. So for purposes of this appeal, is what I'm hearing you say, but you're not saying it totally directly, that for purposes of evaluating at least the attorney's fees portion of the ruling on the Chapter 93A claim, we have to take that as based solely on the evidentiary support that is fraudulent transfers? Yes, Your Honor. I'm sorry if I misunderstood your questions, but we are not disputing the judge's determination that Chapter 93 attorney's fees were based only on the fraudulent transfers. And then, but what you're saying, if I'm following, is that's a separate question from whether there's evidentiary support for the verdict on the Chapter 93A claim, which could be fraudulent conveyances plus other evidence of conduct that would be violent of Chapter 93A. Is that the idea? I'm not quite sure I understand the court's question. There could be two separate issues. The actual award of fees made by Judge Young was based on the smaller remitted figure, which he based on the fraudulent transfers. That's what he based his decision on, attorney's fees. But the jury, in terms of sufficiency of the evidence, there was more evidence than that that was actually before the jury, as to the liability. The reason why this matters, just to build on what Judge Lentz is pointing out, if I understand your opponent's argument, the reason you don't get the attorney's fees is because there's no liability judgment that can stand. And the argument there is there's not a liability judgment that can stand because there's no basis for finding 1.6, which shows that the jury didn't understand what it was doing, so we should throw out that whole verdict. If I understand what you're saying, it's true that the judge below said I'm only going to give you fees on the Chapter 93A claim based on the 1.1 of fraudulent transfers. But he didn't take a position that there was no evidentiary support for a verdict on the Chapter 93A claim of 1.6, because maybe there was evidence of 1.1 of fraudulent transfers plus 500,000 of other conduct that would be violative of Chapter 93A. Is that your understanding, or do I have it wrong? I think the answer is yes, Your Honor, in the sense that it was clearly sufficient evidence for $1.6 million for the jury verdict, for any reasonable jury's verdict. Even though that wasn't true on the fraudulent transfer claim if we take law of the case to be determined by remittitor, because Chapter 93A is a different claim? No, Your Honor. I understand, and maybe I'm misunderstanding the Court's position. Maybe my thoughts are interfering with the exchange. I understood their position to be that there was no evidence of $1.6 million. Clearly, if one looks at the evidence, there is plenty of evidence. I understand that, but what I'm saying is there's two different claims. There's the fraudulent transfer claim, which presumably all you can look at to get to 1.6 is fraudulent transfers. The District Court was unimpressed by that idea and thought 1.1 was all you could show. Then there's the Chapter 93A claim. The kinds of things that could get you to 1.6 under Chapter 93A, given the way it's phrased and given what it's concerned with, it could be fraudulent conveyances plus other deceptive conduct that could get you to 1.6. And the question is, was there evidence put forward that could plausibly support the 1.6 finding on the Chapter 93A claim? It's an awfully coincidental thing that they found 1.6 on both, I realize. But I guess the idea would be, how do we know? And if there was evidence supporting another $500,000 of damages for violative conduct that wasn't fraudulent transfer-based, then there would be evidentiary support for that verdict, even if there wasn't evidentiary support for 1.6 on the fraudulent transfers claim. There was plenty of evidence of 1.6 on the fraudulent transfers. I know that, but I'm trying to get you not to focus on that, because we have a remitter ruling that there wasn't. Look, in many ways, the problem is that Judge Young may well have been wrong on his remitter claim, but your client, for very practical reasons, because they already had a judgment for more than the amount of the remitter claim, decided not to make an issue out of it. You did not take a cross-appeal. And so, from our point of view, it's sort of law of the caves. You haven't challenged it. You had very good practical reasons not to challenge it, but it kind of shapes the precise issue in front of us. Once, I was a practicing litigator, and I thought in those terms. I know that, Your Honor. Then we became impractical as judges. 93A attorney's fees was reasonably based. We think it should have been more, even on the $1.1 million. So let me ask you that. Let's say that, with respect to the Chapter 93A claim, there was evidence only, but there definitely was evidence of at least $1.1 million. Yes, Your Honor. How does that affect how we should think about addressing the challenge to the attorney's fees that's effectively at issue in this appeal? Because their contention is no attorney fees because you have to throw out that whole Chapter 93A verdict. You say, well, at least there's evidence of $1.1, even if there isn't of $1.6. Let's stipulate there's not for $1.6, but there is $1.1. What then happens to your ability to refute their contention, that if you could only show $1.1, that would mean you don't get the attorney's fees at all because that claim has to be thrown out? There's no reason for that determination. The Supreme Judicial Court stated in the Hopkins case that we cite that even one fraudulent or deceptive transaction supports a 93A determination and thus attorney's fees. So whether the judgment on the fraudulent transfers is $1.1 or $1.6, or the jury could have found more, the amount of the attorney's fees was, under those circumstances, although we would have expected more, very reasonable because the judge cut us down. And in any event, the amount of attorney's fees isn't being challenged. It's just whether there should be fees at all. That is correct. And in that sense, they should have challenged the remitted juror award because implicitly, that's a ruling that there was adequate evidence to support the $1.13. Yes, Your Honor. And I just would like to close by pointing out or mentioning to the Court that this Court taught in the Currier case, and cited in our brief, that, quote, we must affirm unless the evidence was so strongly and overwhelmingly inconsistent with the verdicts. That's certainly not the case here. And in this case concerning remitted juror, specifically, this Court stated in the Marchant case, quote, that the remaining total is one which cannot be challenged, period, unquote. And the last question, just so I understand your position, in understanding Rule 50A, the type of challenge that's being made here which depends on a claim about inconsistency of the verdict, it's not evident to me that can even be raised as a Rule 50A challenge. I believe that's so, Your Honor. That the only thing we look at is just a very simple sufficiency of the evidence challenge. They waive their appeal. The only thing that's left to them is to argue to the Court. That there just wasn't evidence to support the verdict. The Court said in the Troll versus Volkswagen case that the only time the Court should overturn a jury verdict where they have waived their right to contest the inconsistent, allegedly inconsistent verdict is where the result is so unjust that it creates a, quote, clear miscarriage of justice or where the error is seriously affected. Okay. Thank you. On behalf of my client and myself, I thank the Court for your attention and time on this matter. Thank you. Thank you. Okay. Thank you very much.